UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PETITION OF HILLSIDE LOUNGE INC. | |
| *Related to* <br><br> UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> BROADCAST MUSIC INC., <br><br> Defendant. | PETITION OF HILSIDE LOUNGE INC. FOR THE DETERINATION OF REASONABLE LICENSE FEES <br><br> Civil Action No.: |

# INTRODUCTION

1. Petitioner Hillside Lounge Inc. d/b/a Bernie's ("Bernie's" or "Petitioner"), by and through counsel, respectfully petitions this Court, pursuant to Section XIV of the Amended Final Judgment entered in *United States v. Broadcast Music, Inc.*, Civ. No. 64-3787, for the determination of a reasonable fee to be paid to Broadcast Music, Inc. ("BMI") for a blanket public-performance license. In support of this Petition, Petitioner states as follows:

## JURISDICTION AND VENUE

2. This Petition arises under the jurisdiction granted to this Court by the Consent Decree entered in *United States v. BMI*, Civ. No. 64-3787 (S.D.N.Y. 1966), as amended (the "BMI Consent Decree"). Section XIV of the BMI Consent Decree vests exclusive jurisdiction in this Court to determine reasonable license fees when BMI and a music user are unable to agree on terms.

1

3.      Venue is proper in this District pursuant to the BMI Consent Decree.

4.      Petitioner Hillside Lounge Inc. is a New Jersey corporation operating a small neighborhood bar and entertainment venue known as "Bernie's," located at Chester, New Jersey.

5.      BMI is a performing rights organization that licenses nondramatic public performances of musical works on behalf of its affiliated songwriters and publishers.

## FACTS GIVING RISE TO THE PETITION

6.      BMI is currently maintaining litigation against Petitioner in the District of New Jersey, alleging copyright infringement arising from the alleged public performance of works from the BMI repertoire without a BMI license.

7.      In response, Hillside engaged in good-faith settlement discussions and offered to resolve any alleged past infringement through a negotiated payment—expressly without any admission of liability—and to secure an appropriate public-performance license on a going-forward basis.

8.      Despite Petitioner's effort to obtain a prospective license consistent with its actual operational scale, BMI refused to offer terms reflecting the realities of the establishment and instead insisted on fees derived from its erroneous capacity assumptions and conclusions.

9.      Bernie's is a modest, neighborhood-scale venue. It has an indoor occupancy of 98 persons, as established by its Certificate of Occupancy issued by the relevant municipal authority.

10.     Bernie's also maintains a small outdoor seating area approximately 80 by 50 feet, which, due to the layout, furniture, and safety-clearance requirements, accommodates no more than approximately 100 patrons.

11.     Bernie's employs two bar staff members, reflecting its modest operating scale.

12. Bernie's operates with limited staff and resources. As a result, it is not capable of serving patrons in both the indoor and outdoor areas simultaneously. Only one of these spaces is open and in use at any given time.

13. Bernie's property abuts a large open field that is unused for customer service.

14. Despite these facts, BMI has asserted that Bernie's has a capacity of 550 persons, a figure Petitioner has repeatedly disputed and for which BMI has offered no credible support.

15. BMI's proposed license fee—which BMI has represented totals $8,525 per year—is based almost entirely on BMI's erroneous assumption that Bernie's is a 550-person establishment.

16. Only one area—indoor or outdoor—is used at any time, depending on weather and operating conditions.

17. Petitioner recently secured public-performance licenses from ASCAP and SESAC. In doing so, Hillside provided both organizations with the same operational information supplied to BMI, including its indoor occupancy of 98 persons, outdoor seating capacity of approximately 100 patrons, limited staffing, and overall scale of operations.

18. After reviewing this information, ASCAP and SESAC each issued a license for approximately $650, each reflecting rate structures consistent with venues of Hillside's size and business model.

19. These contemporaneous licenses further demonstrate that BMI's proposed fee—premised on a 550-person capacity—is unsupported by the actual facts, materially inconsistent with industry-standard licensing practices, and inherently unreasonable.

20. Upon information and belief, the level of license fees BMI now demands is typically paid only by substantially larger establishments—venues that offer multi-room live entertainment, host high-volume programming, employ dozens of staff, and operate on a commercial scale far

exceeding that of Petitioner. BMI's proposed fee is therefore aligned with enterprises of an entirely different size and character, not with a neighborhood establishment such as Hillside.

21. Bernie's bears no commercial resemblance to these venues. It does not operate a ticketed concert hall, does not offer multi-room programming, and does not have the personnel or physical footprint to accommodate audiences anywhere near 550 people.

22. Upon information and belief, venues with commercial footprints comparable to Bernie's—small, single-room establishments with limited occupancy, modest staffing, and limited live-entertainment—pay annual public-performance license fees that are a fraction of the amount BMI now demand of.

23. Upon information and belief, BMI's proposed fee bears no reasonable relationship to the rates charged to establishments comparable to Petitioner.

24. Upon information and belief, BMI's insistence on an inflated license fee—premised on a capacity figure more than five times greater than Petitioner's actual occupancy—is a retaliatory response to the separate infringement action BMI initiated in New Jersey.

## **REQUEST FOR RELIEF**

Petitioner respectfully requests that the Court:

a) Determine a reasonable annual license fee for Petitioner for the applicable period, based on the actual occupancy, operating scale, and comparable venue benchmarks described above;

b) Declare that BMI's proposed fee, premised on a non-existent 550-person capacity, is unreasonable under the BMI Consent Decree

c) Award such other and further relief as the Court deems just and proper.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Date: December 10, 2025 | /s/ Dmitry Lapin |
|  | Dmitry Lapin, Esq.<br>Axenfeld Law Group, LLC<br>2001 Market Street Suite 2500<br>Philadelphia, PA 19103<br>dmitry@axenfeldlaw.com<br>917-979-4570 |
|  | *Attorneys for Petitioner* |